IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

MATT D. BEGGS                                                                                              PLAINTIFF

VS.                                          CIVIL NO. 05-2029

JO ANNE B. BARNHART, COMMISSIONER
SOCIAL SECURITY ADMINISTRATION                                                    DEFENDANT

## **MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Matt Beggs, brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration ("Commissioner") denying his claims for disability insurance benefits ("DIB"), and supplemental security income ("SSI") benefits under the provisions of Titles II and XVI of the Social Security Act ("Act").

**Procedural Background:**

The applications for DIB and SSI now before this court were filed on March 24, 2003, alleging an onset date of April 1, 2001, due to lower back pain. (Tr. 53-55, 59, 155-157). An administrative hearing was held on May 17, 2004. (Tr. 168-205). Plaintiff was present and represented by counsel.

At the time of the administrative hearing, plaintiff was thirty-three years old and possessed a tenth grade education. (Tr. 174-175). His past relevant work ("PRW"), consisted of employment as an oil field equipment mechanic and a pump and tank servicer. (Tr. 60, 199).

On September 8, 2004, the Administrative Law Judge ("ALJ"), issued a written decision finding that plaintiff's advanced degenerative disc disease ("DDD") and status-post L4-5 removal and L5-S1 laminoforaminotomy were severe impairments. (Tr. 12-13, 19). However, he concluded that these impairments did not meet or equal the criteria of any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4. After discrediting plaintiff's subjective allegations, he determined that plaintiff retained the residual functional capacity ("RFC") for light work with a sit/stand option. (Tr.

19). The ALJ further limited plaintiff to occasional stooping, crouching, kneeling, crawling, reaching overhead, and using stairs, and prohibited him from using ladders or ropes. (Tr. 19). He then concluded that plaintiff could not return to his PRW, but could still perform a significant number of jobs in the national economy. (Tr. 19-20).

On December 20, 2004, the Appeals Council declined to review this decision. (Tr. 3-5). Subsequently, plaintiff filed this action. (Doc. # 1). This case is before the undersigned for report and recommendation. The plaintiff and Commissioner have filed appeal briefs, and the case is now ready for decision. (Doc. # 5, 6).

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and

that prevents his from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require her to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)- (f)(2003), 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his or her residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C.F.R. §§ 404.1520, 416.920 (2003).

**Discussion:**

Of particular concern to the undersigned is the ALJ's failure to properly consider the RFC assessment of Dr. Robert Thompson, an examining orthopaedist. *See Reeder v. Apfel*, 214 F.3d 984, 988 (8th Cir. 2000) (holding that the ALJ is not free to ignore medical evidence, rather must consider the whole record). The relevant medical evidence of record is as follows. On August 29, 1996, plaintiff underwent a left L4-5 disc removal and an L5-S1 laminoforaminotomy. (Tr. 95). There

were no complications, and the pathology report was compatible with disc herniation. (Tr. 95, 107). Accordingly, plaintiff was released home on September 1, 1996. (Tr. 95).

In November 2000, plaintiff reported pain, after cutting wood. (Tr. 119). A CT scan revealed a mildly protruded posterior lateral disc at the L3-4 level, a left-sided protruded disc at that L4-5 level where he had his previous surgery, and a small posterior central disc protrusion at the C5-S1 level. (Tr. 118).

On February 9, 2001, plaintiff sought treatment for lower back pain, that had worsened over the past "couple of" weeks. (Tr. 117). He indicated that he had been doing dozer work, and injured his back. As a result, plaintiff stated that he was going to begin driving a truck for his employer. Dr. Patty Borklund noted that plaintiff was alert, appropriate, and in no acute distress. However, he did walk with a limp, and reported generalized lower back pain. As such, Dr. Borklund prescribed Lorcet Plus, Flexeril, and exercises. (Tr. 117). Then, on February 19, 2001, Dr. Borklund released plaintiff to return to work. (Tr. 117).

On December 19, 2001, plaintiff again complained of lower back pain. (Tr. 117). Dr. Borklund noted that he had significant disc disease, and had undergone surgery on his lumbar spine. Plaintiff denied experiencing radicular symptoms, but did have a right curve and considerable muscle spasm in the lower back. Accordingly, Dr. Borklund prescribed Lorcet and Ibuprofen, and diagnosed him with lumbosacral strain. (Tr. 117).

On June 12, 2003, plaintiff underwent a general physical examination with Dr. Michael Westbrook. (Tr. 128-133). Plaintiff complained of lower back pain that occasionally radiated into his right leg. (Tr. 128). Dr. Westbrook's notes indicate that plaintiff's physical examination was unremarkable. (Tr. 130-133). Further, he noted that x-rays of plaintiff's lumbar spine showed only

post-surgical changes at the L5-S1 level with decreased disc space at the L4-5 and L5-S1 levels. (Tr. 133). Therefore, he diagnosed plaintiff with post-surgical back pain, but reported no limitations. (Tr. 134).

On November 7, 2003, plaintiff sought emergency treatment for his continued back pain. (Tr. 147). However, Dr. Patty Pettway advised the ER to send plaintiff to her clinic. He presented with severe left flank pain, which he had reportedly experienced for two days. (Tr. 149). Plaintiff stated that the pain began after he bent over in the shower to pick up the soap. He indicated that he immediately felt a pull in his back, and that the pain had been constant since then. Dr. Pettway noted that plaintiff did have DDD. On examination, she reported swelling in the lower lumbar area. As such, Dr. Pettway diagnosed him with acute lumbosacral strain, and prescribed Flexeril and Lorcet. She also gave him injections of Demerol and Phenergan. (Tr. 149).

On July 20, 2004, plaintiff underwent an examination by Dr. Thompson, an orthopaedist. (Tr. 150). Dr. Thompson indicated that plaintiff had limited endurance secondary to back pain. Plaintiff relayed his history of surgery, stating that he had been able to return to work until 2002. On examination, Dr. Thompson noted a normal range of motion and a normal neurological examination of the upper extremities. However, he reported decreased sensation in the right calf, right heel, and right ankle. Dr. Thompson also found weakness of dorsiflexion in the right foot. His notes indicate that plaintiff held his back "quite stiffly," and had decreased forward and lateral bending of the lumbar spine. (Tr. 150). Further, x-rays of his lumbar spine revealed advanced DDD at the L4-5 and L5-S1. (Tr. 152).

In support of his opinion, Dr. Thompson completed an RFC assessment. (Tr. 153). Based upon his evaluation of plaintiff and the x-rays obtained, Dr. Thompson concluded that plaintiff could

5

lift up to ten pounds frequently, eleven to twenty pounds rarely, and never lift twenty-one to one hundred pounds. Further, he determined that plaintiff could sit for four hours during an eight-hour workday and stand and/or walk for a maximum of two hours. Dr. Thompson was of the opinion that plaintiff should never climb, balance, stoop, crouch, kneel, or crawl, and should avoid all exposure to heights and moving machinery. (Tr. 153).

In spite of this evidence, however, the ALJ dismissed Dr. Thompson's opinion, in favor of Dr. Westbrook's opinion, stating that Dr. Thompson's assessment was in conflict with the record as a whole. However, after a thorough review of the record, we do not agree. As recited above, an MRI performed in 2000, approximately four years after plaintiff's surgery, showed a mildly protruded posterior lateral disc at the L3-4 level, a left sided protruded disc at that L4-5 level where he had his previous surgery, and a small posterior central disc protrusion at the C5-S1 level. (Tr. 118). Further, records indicate that plaintiff has been treated for lower back pain since that date, and had been given prescriptions for narcotic pain medication, namely Lorcet Plus, as well as muscle relaxers. (Tr. 117, 149). Therefore, given these facts, coupled with the fact that Dr. Thompson is an orthopaedic specialist, we believe that his opinion was entitled to more weight that was given by the ALJ. *See Singh v. Apfel*, 222 F.3d 448, 452 (8th Cir. 2000) (holding that Commissioner is encouraged to give more weight to the opinion of a specialist about medical issues related to his or her area of speciality than to the opinion of a source who is not a specialist). Accordingly, on remand, the ALJ is directed to reevaluate the medical evidence.

After reviewing the entire record, it also appears that none of plaintiff's treating physicians have completed an RFC assessment for the time period in question. *See Vaughn v. Heckler*, 741 F.2d 177, 179 (8th Cir. 1984) (If a treating physician has not issued an opinion which can be

adequately related to the disability standard, the ALJ is obligated to address a precise inquiry to the physician so as to clarify the record). We note, that the opinion of a consulting physician who examined the plaintiff once or not at all does not generally constitute substantial evidence. *See Jenkins v. Apfel*, 196 F.3d 922, 925 (8th Cir. 1999). Accordingly, on remand, the ALJ is directed to address interrogatories to the physicians who have treated plaintiff, asking the physicians to review plaintiff's medical records; to complete a physical RFC assessment regarding plaintiff's capabilities during the time period in question; and, to give the objective basis for their opinions, so that an informed decision can be made regarding plaintiff's ability to perform basic work activities on a sustained basis during the relevant time period in question. *Chitwood v. Bowen*, 788 F.2d 1376, 1378 n.1 (8th Cir. 1986); *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985).

## **Conclusion:**

Based on the foregoing, we recommend, reversing the ALJ's decision, and remanding the case for further consideration pursuant to sentence four of 42 U.S.C. § 405(g). **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 16th day of February 2006.

/s/ Beverly Stites Jones
HON. BEVERLY STITES JONES
UNITED STATES MAGISTRATE JUDGE